In re Hiram E. CLAYSON, Debtor.

John H. Heyer, Trustee, Plaintiff,

v.

Conesus Milk Producers Cooperative Association, Inc., Defendant.

Bankruptcy No. 03–14651 B.
Adversary No. AP 03–1252 B.

United States Bankruptcy Court,
W.D. New York.

March 24, 2006.

---

John H. Heyer, Esq., Olean, NY, Trustee and Attorney for Trustee.

Michael J. Kelly Esq., Perry, NY, for Defendant.

## DECISION & ORDER

CARL L. BUCKI, Bankruptcy Judge.

To avoid controversy for an improper distribution of funds, stakeholders will often issue checks made payable jointly to all potential claimants. But this shorthand solution may have other implications. In the present dispute, an auctioneer distributed the proceeds of sale by means of a check made payable jointly to the owner and to a party claiming to hold a security interest in the collateral. The key issue is whether the auctioneer has thereby authenticated a record acknowledging possession of collateral for the benefit of the creditor, so as to effect perfection under Revised Uniform Commercial Code § 9–313(c)(1).

Prior to the filing of his bankruptcy petition, Hiram E. Clayson owned and operated a dairy farm. In July of 2000, Mr. Clayson borrowed the sum of $49,545 from Conesus Milk Producers Cooperative Association, Inc. ("Conesus"). To secure this obligation, Conesus received a security interest in Clayson's cattle. Conesus, however, failed to file the financing statement as required to perfect its lien under Former UCC § 9–302 or Revised UCC § 9–310. Thereafter encountering financial problems, Clayson decided to liquidate his herd in February of 2003. Accordingly, he arranged for Empire Livestock Marketing LLC ("Empire Livestock" or auctioneer) to take possession of his animals and to conduct an auction sale. Prior to the sale, Clayson advised the auctioneer about the outstanding debt to Conesus. The auctioneer then informed Conesus about the anticipated sale. With the consent of Conesus, Empire Livestock completed the auction, which generated net proceeds of $21,355.04. On March 12, 2003, Empire Livestock sent to Clayson a check for this amount made payable jointly to Clayson and Conesus. Uncertain about how to proceed, Clayson forwarded this instrument to his bankruptcy attorney, who decided to hold it until after Clayson could file a petition for relief under chapter 7. Meanwhile, Conesus persuaded the auctioneer to issue a substitute check made payable only to Conesus, which Conesus then negotiated in early April of 2003. Finally, on June 19, 2003, Clayson commenced the present bankruptcy proceeding.

The chapter 7 trustee commenced this adversary proceeding to compel Conesus to turn over the auction proceeds that it had received from Empire Livestock. Essentially, the trustee contends that Conesus failed to perfect its security interest, so that Conesus would hold the status of a general unsecured creditor only. From the trustee's perspective, therefore, the payment to Conesus would constitute a preference that the bankruptcy estate can now recover by reason of 11 U.S.C. §§ 547 and 550. In response, Conesus argues that its lien was perfected from the moment that Empire Livestock had both knowledge of the lien and possession of the collateral. Asserting that this perfection occurred more than ninety days before the bankruptcy filing, Conesus contends that any transfer was effectively completed outside the preference period and that Conesus therefore enjoys a superior interest in the auction proceeds.

Prior to July 1, 2001, Former UCC § 9–305 would have governed the present dispute. In relevant part, that section provided that a security interest in goods would "be perfected by the secured party's taking possession of the collateral. If such collateral ... is held by a bailee, the secured party is deemed to have possession from the time the bailee receives notification of the secured party's interest." Were this provision to apply in the present instance, Conesus would have enjoyed a perfected security interest as of February 2003, when the debtor told Empire Livestock about the secured indebtedness at the time that the debtor surrendered the cattle to Empire Livestock as a bailee. In 2001, however, New York State adopted Revised Article 9 of the Uniform Commercial Code. The present dispute involves rights under an agreement made in 2000 but with respect to events that occurred in 2003. Accordingly, this court must determine whether the 2001 revision applies, and if it does apply, whether the new statute would compel the same outcome as under the prior law.

■ In New York, Revised Article 9 of the Uniform Commercial Code took effect on July 1, 2001. Revised UCC § 9–701. Pursuant to Revised UCC § 9–702(a), "[e]xcept as otherwise provided in this part, Revised Article 9 applies to a transaction or lien within its scope, even if the transaction or lien was entered into or created before Revised Article 9 takes effect." Thus, as a general rule, Revised Article 9 would apply to the present instance, even though Clayson granted a security interest prior to the effective date of the statute. More specifically, the following text of Revised UCC § 9–704 confirms the application of the new statute to disputes involving the perfection of a previously unperfected security interest:

A security interest that is enforceable immediately before Revised Article 9 takes effect but which would be subordinate to the rights of a person that becomes a lien creditor at that time: ... (c) becomes perfected: (1) without further action, when Revised Article 9 takes effect if the applicable requirements for perfection under Revised Article 9 are satisfied before or at that time; or (2) when the applicable requirements for perfection are satisfied if the requirements are satisfied after that time.

In the present instance where Conesus had failed to perfect its lien prior to July 1 of 2001, Conesus could thereafter perfect its lien only through compliance with the requirements of Revised Article 9.

■ Conesus makes no claim that it ever perfected its lien by means of an appropriate filing. Revised UCC § 9–313(a) provides, however, that a secured party may also perfect a security interest in goods "by taking possession of the collateral." When that collateral is in the possession of a person other than the debtor, Revised UCC § 9–313(c) establishes the standard for what constitutes possession by the secured creditor for purposes of perfection:

With respect to collateral other than certificated securities and goods covered by a document, a secured party takes possession of collateral in the possession of a person other than the debtor, the secured party, or a lessee of the collateral from the debtor in the ordinary course of the debtor's business, *when: (1) the person in possession authenticates a record acknowledging that it holds possession of the collateral for the secured party's benefit;* or (2) the person takes possession of the collateral after having authenticated a record acknowledging that it will hold possession

of collateral for the secured party's benefit.

(emphasis added). To establish possession for purposes of perfection, it no longer suffices to show that a bailee had received notification of a security interest. Rather, "the bailee must acknowledge that it possesses on behalf of the secured creditor and that acknowledgement must be in a record (information inscribed on a tangible medium or which is stored in an electronic or other medium and is retrievable in perceivable form)." 4 James J. White & Robert S. Sommers, Uniform Commercial Code § 31–8, at 154 (5th ed.2002).

■ Conesus has presented no evidence showing that Empire Livestock authenticated a record, at any time prior to the sale of the cattle, by which Empire acknowledged possession of the collateral for the benefit of Conesus. Any lien, however, would also attach to identifiable proceeds. Revised UCC § 9–315(a)(2). On March 12, 2003, Empire Livestock issued a check made payable jointly to Clayson and Conesus for the amount of the net proceeds. This check is itself an authenticated record. Revised UCC § 9–102(69) defines "record" to include "information that is inscribed on a tangible medium." Being a "tangible medium," the paper on which the check from Empire Livestock is printed became a record for the listing of Conesus as one of two joint payees. Pursuant to Revised UCC § 9–102(7), "authenticate" means either "(A) to sign; or (B) to execute or otherwise adopt a symbol, or encrypt or similarly process a record in whole or in part, with the present intent of the authenticating person to identify the person and adopt or accept a record." By signing the check, therefore, an agent for Empire Livestock authenticated a record. The issue is whether this record satisfies the requirement of Revised UCC § 9–313(c)(1) to serve as an acknowledgment that Empire Livestock held possession of the proceeds for the benefit of the secured party. In the commercial context, payment constitutes the ultimate acknowledgment of liability. By making a check payable jointly to two parties, Empire Livestock acknowledged that it held proceeds for the benefit of both Clayson and Conesus. This joint designation definitively identified the parties for whose benefit the drawer held the collateral.

■ In defining the occurrence of perfection, Revised UCC § 9–313 does not require that a bailee acknowledge the nature of a secured interest, but only the party for whose benefit the bailee holds possession. The joint check constituted an authenticated record that fully acknowledged that Empire Livestock had held the cattle for the benefit of the identified parties, including Conesus. Accordingly, lien perfection would have occurred upon the issuance of the check on March 12, 2003. Because that date fell on the 99th day before Clayson's bankruptcy filing, the lien perfection occurred prior to the preference period under 11 U.S.C. § 547(b)(4). Representing the satisfaction of a perfected security interest, the eventual payment from Empire Livestock to Conesus was similarly not preferential.

The lien of Conesus was finally perfected through the authentication of a bailee's acknowledgment that it held collateral for the benefit of Conesus. For this reason, Conesus holds a superior right to proceeds from the sale of the debtor's livestock. Consequently, this court will dismiss the complaint of the trustee to compel a turnover of those proceeds.

So ordered.